John V. Kilkin, Respondent, *v.* The New York Central and Hudson River Railroad Company, Appellant.

*Negligence — injury to a brakeman falling from a car because of ice thereon — his duty to inspect the car.*

In an action brought to recover damages for personal injuries which the plaintiff, a freight brakeman employed on the defendant's railroad, had sustained by falling because of snow and ice which had accumulated on the top of a car in a freight train on which the plaintiff was employed, it appeared that the plaintiff was an experienced employee and was chargeable with knowledge of the fact that the defendant was not accustomed to guard against the accumulation of ice and snow upon the top of cars by the employment for that purpose of independent inspectors, and that all that was ever done to guard against the dangers incident to the presence of snow and ice upon the tops of freight cars was that the employees of the train would occasionally scatter salt or ashes thereon. The defendant's rules required brakemen to inform themselves as to the condition of equipment and track, brake wheels and other appliances, and to look over the train carefully.

The trial judge charged that, under the rules promulgated by the defendant, it was the plaintiff's duty to examine the tops of the cars for snow and ice. He also held, as matter of law, that if the plaintiff had examined the roof of the car in question before the train started, he would have learned of the condition which resulted in the accident.

He ruled, however, that as the plaintiff had testified that he did not examine the car or know of the existence of the snow and ice, it was for the jury to say whether he had reasonable time and opportunity, in the midst of his other duties, to make such an examination and inspection before starting.

The jury found a verdict in favor of the plaintiff and, upon an appeal from the judgment entered upon such verdict, it was

*Held,* that the evidence fairly disclosed that the movement of the cars, while the train was being made up and started, was so far under the control of the plaintiff and his fellow-brakemen that they might, if they so desired, have examined the tops of the cars for snow and ice, and that, consequently, it must be held, as matter of law, that, as the plaintiff had omitted to make such an inspection, he assumed all the risks incident to the presence of snow and ice upon the tops of the cars.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 7th day of January, 1902, upon the verdict of a jury for $10,000, and also from an order entered in said clerk's office on the 7th day of January, 1902, denying the defendant's motion for a new trial made upon the minutes.

*L. B. Williams,* for the appellant.

*George McGowan,* for the respondent.

HISCOCK, J.:

Plaintiff, while engaged in his duties as a freight brakeman, slipped upon some snow and ice upon the top of one of defendant's freight cars and fell and was injured. He recovered a verdict against defendant for such injuries upon the theory that the latter was negligent in not inspecting the tops of its cars for snow and ice and in not removing the same therefrom before sending them out. We think that he did not establish a cause of action, and that the judgment and order appealed from should be reversed.

Plaintiff met with his accident while he was engaged in the line of his duty upon the night of January 17, 1900. He was at that time engaged in running as such brakeman upon one of the defendant's lines, extending between Syracuse and Watertown. He had been working upon this same route as such brakeman from September, 1898, to the time of the accident. He had also been engaged in the same position on the same line from March to September in the year 1891 or 1892. At the expiration of said last period he was off for a couple of months, and was then engaged as a passenger brakeman until he entered upon the last period of employment in September, 1898. The evidence fairly permitted the jury to find that upon the night in question he was engaged with his fellow-employees in making up a freight train in the yard in Syracuse, and that at about half-past seven in the evening he started north with the train; that he proceeded past the station of Brewerton, and then, while engaged in trying the brakes, went upon the car in question and slipped and fell to the ground; also that he had not actually seen, before he fell, the snow or ice which was on the top

of the car ; also that the car in question came into defendant's yard in Syracuse upon the evening of January sixteeenth with the snow and ice then upon it whereon plaintiff is alleged to have slipped.

Except as hereinafter stated defendant never upon any of the routes covered by plaintiff established the practice of, or promulgated rules for, inspecting the tops of its freight cars for snow and ice, or for removing the same therefrom before starting out.

There was evidence that several years before the date of this accident, in a yard at Buffalo occupied in part by defendant, it was customary for inspectors to examine the tops of freight cars with reference to such matters. Such inspection, however, seems to have been more or less incidental to the more common and thorough examination of such cars and their appliances with reference to other things. Plaintiff, moreover, never ran into said yard, and at no time in the yards in which he worked was it customary for independent inspectors to examine cars in this regard. We think that the evidence permits of no question upon this point, or upon the other proposition, that plaintiff must be charged with knowledge of defendant's system and practice upon this subject.

Upon the trial defendant gave evidence of rules theretofore promulgated by it which, it is claimed, imposed this duty of inspection upon plaintiff himself and his fellow-brakemen. These rules provided, in substance, that employees, thereby including freight brakemen, were required to inform themselves as to the condition of equipment and track ; also were required to know that all brake wheels, dogs, grab irons, hand poles, steps and other appliances used in the line of their duty were secure and in safe condition before using the same. Said rules also required freight brakemen to look over the train carefully and know that all couplings, brakes and running gears were in good order, and to inspect the train as often as possible during a trip.

The learned trial justice in substance charged that these rules were applicable to plaintiff, and covered the examination of the top of a freight car in his train for snow and ice. He also held, as a matter of law, that if he had examined the roof of the car in question before it started out he would have learned of the condition which resulted in his accident. But plaintiff having testified that he did not examine the car therefor, or know of the existence of

said ice, said trial justice ruled that it was for the jury to say whether he had reasonable time and opportunity, in the midst of his other duties, for such examination and inspection before starting out. It also appeared that sometimes employees upon a train sprinkled salt or ashes upon the snow or ice which had accumulated upon the cars, and, so far as is disclosed, this was all that was ever done to guard against the same when discovered.

We do not regard it necessary or desirable to enter upon a discussion and determination of the general proposition whether a railroad company should be required to extend to the tops of its cars a system of independent inspection and examination such as is commonly applied to various other appliances upon, and parts of, its cars and trains.

Keeping in mind some of the rulings applied by the trial justice, as above stated, to the submission of this case, and accepting certain facts, which are either established beyond dispute by the evidence before us, or are matters of ordinary observation and experience, we are led to the determination that plaintiff in this action was not in a position to recover a verdict.

Independent of the evidence given upon that subject, in view of his extended experience, it must have been a matter of observation and knowledge by plaintiff that snow and ice were liable to accumulate upon the tops of freight cars. These cars ordinarily were not housed but stood outdoors. While pains were taken to explain that ordinary snow would fly from the top of a car while in motion, it could not be otherwise than that, in the climatic changes in the country where plaintiff was working, there would be constantly recurring periods of freezing and thawing which would form ice or packed snow upon the tops of exposed cars. Plaintiff himself, at various points in his evidence, tells of the manner in which he was accustomed to avoid cars which had thus become slippery and dangerous. As already indicated, plaintiff must be charged with knowledge at the time of the accident that defendant was not accustomed to guard against such accumulation of ice and snow through inspection and removal thereof by independent and especially employed inspectors. He must be charged with having known that the regular car inspectors did not examine the tops of cars for these alleged defects and that nothing was ever done to protect against them,

except that casually or occasionally the employees of a train scattered salt or ashes thereon. Neither are we able, after adopting the ruling made upon the trial, as we are bound to in considering this appeal, that plaintiff was required, under defendant's rules above mentioned, to examine for snow and ice, to agree with the learned trial justice that he was relieved from the performance of such duty through lack of opportunity to make such examination. We think that the evidence fairly discloses that the movement of the cars, while the train was being made up and started, was so far under the control of the plaintiff and his fellow-brakemen that they would have had an opportunity, if they desired, to examine the tops of cars for ice. Such examination would have required a very brief time and would not have occupied so long a period as was consumed in certain other examinations and inspections which they made and for which, under their signals, the starting of the train was delayed.

Under such circumstances, we think it must be held, as matter of law, that plaintiff was fully aware of the probability of dangers which finally resulted in his misfortune, and that he was likewise fully aware of the methods and practice which defendant employed for dealing with these dangers, and that, this being so, he assumed all of the risks incidental thereto. It is apparent that a system of inspection, such as plaintiff contends for in this case, would impose upon the railroad company a large burden of care and responsibility. That, however, will not constitute a legal excuse for not discharging the duty if it shall hereafter otherwise be held necessary and legal for it to do so. Upon the facts presented in this particular case, however, it appears to us to be clear that, up to the time of this accident, defendant had not deemed it wise or practical to do as is now suggested by plaintiff, and that plaintiff, either from the smallness of the risk or from the infrequency of accidents therefrom or for some other reason, had deemed it safe and proper for him to continue in the employment of the defendant without such precautions as are now urged. Under these circumstances we feel that his accident was the result of a risk which he fairly and intelligently assumed. (*Crown* v. *Orr*, 140 N. Y. 450; *Dowd* v. *N. Y., O. & W. R. Co.*, 170 id. 459.)

Plaintiff's counsel, both from his written brief and by his oral argument, has earnestly and forcibly urged that the assumption of

risks by an employee is a matter of defense and must be affirmatively and expressly pleaded by answer, and that this not having been done in this case, the same is not available. Without passing upon this contention in its full breadth, we think that it sufficiently appears from the record of the trial, and especially from the charge of the court in submitting the case, that this question and defense was treated as being before the court and was so considered and passed upon that we are entitled to take it into consideration upon this appeal.

The judgment and order should be reversed, with costs to the appellant to abide event.

McLENNAN, SPRING, WILLIAMS and DAVY, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide the event, upon questions of law only, the facts having been examined and no error found therein.