BARBARA SCHEIR, as Administratrix, etc., of JOSEPH SCHEIR, Deceased, Respondent, v. WILLIAM C. A. QUIRIN, Appellant.

*Negligence — employee of a tannery falling into a vat — risk incident to the business — an objection that a defense was not pleaded is not first available on appeal — proof of freedom from contributory negligence — declarations after the accident as res gestæ.*

In an action to recover damages resulting from the death of the plaintiff's intestate, it appeared that the defendant operated a tannery and that he maintained therein a series of cooling vats into which superheated tanning liquor was conveyed from time to time by means of a trough called a pump log; that the series of vats extended in a northerly and southerly direction and that the pump log was placed on top of the vats and a few inches from the westerly side thereof; that extending along the series of vats, a little east of the center thereof, was a staying timber used to bind the partitions of the vats together; that, for the purpose of providing the employee in charge of the vats with a platform upon which to stand while driving plugs into the bottom of the vats, a plank had been placed on top of the vats extending from the staying timber to the pump log.

It further appeared that on the day of the accident the intestate, who was an experienced employee of the defendant, was notified to take charge of one of the cooling vats which had been filled with the superheated tanning liquor, and that, in some undisclosed manner, he fell into the vat; that he ran into a boiler house about seventy feet away and called out to a co-employee, "Oh, George, I am scalded, the plank slipped off and throwed me in."

No one saw the accident and there was no direct proof showing precisely how it occurred. There was testimony, however, given by men who went to the place of the accident immediately after its occurrence, tending to show that the westerly end of the plank was in the vat; that the other end rested on the staying timber and that the liquid was spattered upon the plank, pump log and partition.

*Held,* that, assuming that there was sufficient evidence to show that the intestate was upon the plank when, in some manner, it fell into the liquor, carrying him along with it, the plaintiff was not entitled to recover;

That the risk of falling into the vat while standing upon the plank was an incident of the intestate's employment and was assumed by him;

That the objection that the defendant had not pleaded as a defense the assumption of the risk by the intestate could not be taken for the first time upon appeal;

That, in the absence of testimony, either direct or inferential, that the intestate had exercised the caution which the conditions demanded of him, it could not be said that the plaintiff had shown that the intestate was free from contributory negligence;

That the declaration made by the intestate to his co-employee after falling into the vat was competent as part of the *res gestæ;*

That, in order to make such a declaration competent, it must bear a close relation to the principal transaction and must be a spontaneous exclamation or an outburst of feeling and not a mere narration of a past event.

APPEAL by the defendant, William C. A. Quirin, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cattaraugus on the 20th day of June, 1902, upon the verdict of a jury for $2,750, and also, as stated in the notice of appeal, from an order denying the defendant's motion for a new trial made upon the minutes.

The order denying the new trial does not appear in the record.

*Fred L. Eaton,* for the appellant.

*W. D. Parker,* for the respondent.

SPRING, J. :

The plaintiff's intestate, an employee of the defendant, on the 5th of January, 1901, fell into a vat of boiling liquid, receiving injuries which resulted in his death, and which are the basis of the present cause of action. The defendant owned and operated a tannery in the town of Olean, Cattaraugus county. Plaintiff's intestate had been in his employ for three years and was consequently familiar with the work in which he was engaged at the time he sustained the injuries complained of. A brief sketch of the construction of the defendant's plant and of the surroundings, so far as pertinent, may be useful to a better appreciation of the situation. The defendant's tannery is a large industry and the tan bark is ground up and water poured in upon it in large tanks. In a false bottom of each tank are steam pipes which heat the liquid to a very high temperature. There are a series of thirteen vats uniform in size and construction, abutting upon these large tanks. Each of these vats, which are called cooling vats, is eighteen feet long, about nine feet wide, and four and one-half feet in depth. They are separated by partitions made of two-inch planks, and the thirteen vats thus joined together extend in a northerly and southerly direction; but each individual vat is longest east and west. The hot liquid from the tanks is let into these vats through a trough made of two-inch planks called a pump log, the inside measurement of which is about eight inches each way. This log extends along close to the westerly side and on the top of these cooling vats, and the top of the pump

log is about flush with the top of the vats and a few inches from the westerly side. There are holes in the pump log through which the liquor runs into the several vats and which are plugged when not in use or when it is desired to stop the flow of the liquid. In the bottom of each vat are also logs or pipes through which the liquid when cooled is run off into other vats. Along the westerly or long side and about nine inches below the top of the vats was a walk separating them from the leeching vats. These cooling vats were covered by a shed or roof.

The injuries to the decedent were inflicted by his falling into vat No. 1, which is the southerly of this series of vats. There are three holes in the conduits in the bottom of tank No. 1 in which plugs are inserted when the vat is being filled with liquid. There is a long handle attached to these plugs reaching to the top of the vat so that it can be manipulated when the vat is filled. These vats are not all filled with the hot liquid at the same time, but the same pipes are used to empty all of the vats. When the liquor from one tank is permitted to run out, it is claimed it will sometimes loosen by pressure the plugs in the other tanks, and the employee who looks after them is then compelled to tighten them with a mallet. The holes at the bottom of tank No. 1 are situated close up to the partition between that vat and the one adjoining on the north. One is near the westerly side of the vat, the other about two feet easterly, and the remaining one still further along two feet. There is some dispute as to the manner in which these plugs are tightened. Evidence was produced on the part of the plaintiff from which it appears that a man in using the mallet would stand with one foot on the pump log and the other on the staves or planks which compose the partition between the two vats. It appears also that there is a stick of timber about eight by four inches extending along these vats which is used to bind or tie the partitions together so that they will not topple over. This staying timber is a little east of the center of these vats. The proof shows that a plank was placed from this tie timber to the upper pump log upon which the employee stood and drove down the easterly plug whenever it became loosened.

The theory of the complaint in this action is that the decedent was in the act of driving a plug in the upper pump log " for the

purpose of shutting off the flow thereof into one of said vats" when he was precipitated into the vat. The action, however, was tried against the protest of the defendant upon the assumption that Scheir, the intestate, was upon the plank driving the plug into one of the lower conduits when the plank slipped into the vat, carrying him down with it.

We do not give to this variance the substantial effect assigned to it by the counsel for the appellant. In any event the charge is that the accident occurred by the slipping or the falling of the plank while the intestate was standing upon it driving or handling a plug. If the master was liable at all under the rule requiring him to furnish to this workman a suitable appliance to carry on the work it is not of especial significance just what particular act the employee was performing when the plank slipped if he was within the range of his employment.

On the day of the accident this vat No. 1 had been cleaned of sediment, and the superheated liquor was run into it, and Scheir was notified to take charge of it, which was his ordinary duty. The vat was about filled when in some manner, which does not appear, he fell into this hot liquor. He ran into a boiler house about seventy feet away and called out to a co-employee, " Oh, George, I am scalded, the plank slipped off and throwed me in." No one saw the accident and there is no direct proof showing precisely how it occurred. There was proof adduced by men who went to the place of the accident immediately upon its occurrence showing that the westerly end of the plank was in the vat, the other end resting on the tie beam, and that the liquid was spattered about upon the plank, pump log and partition. There may be sufficient, therefore, to show that the decedent was upon this plank when in some manner it fell into the liquor, carrying him along with it.

Assuming this to be so, we think it quite clear that the plaintiff was not entitled to recover. He was very familiar with the surroundings. He had used this plank very often. There is no pretense that it was not long enough to reach safely from the tie timber to the pump log. While standing over this hot liquid with the escaping steam is a dangerous employment, yet its hazard was an incident to the business and was as well known to Scheir as to the defendant. It required no scientific knowledge to see how the

plank was placed and that care and caution must be exercised to prevent an accident. . It is one of the class of accidents which are frequent in dangerous employments about manufacturing establishments and which occur to the most experienced employee. In fact, the very familiarity of the intestate with, this business may have lulled him into the security which is tantamount to carelessness.

The answer itself does not set forth the defense of assumption of risk by Scheir. (*Dowd* v. *N. Y., O. & W. Ry. Co.*, 170 N. Y. 459.) The facts, however, all came out upon the trial without any objection, and the question of this defect in the answer was not raised. Had it been, an opportunity would probably have been given to amend the answer upon such terms as would have been proper.· We think it is too late upon this appeal to raise this objection. (*Kilkin* v. *N. Y. C. & H. R. R. R. Co.*, 76 App. Div. 529.)

Nor do we think the plaintiff has met the affirmative obligation imposed upon her of showing freedom from carelessness on the part of the intestate. Where death results from injuries and where there are no eye witnesses of the transaction there is a relaxation in the proof required, but the burden of establishing the absence of contributory negligence still remains unshaken. (*Pruey* v. *N. Y. C. & H. R. R. R. Co.*, 41 App. Div. 158; affd., 166 N. Y. 616, and cases cited.) We are entirely in the dark as to the situation of the plank or what caused it to slip or fall. There is no pretense that it was broken or defective. If too close to the edge of the pump log, the decedent should have observed it. If it slipped because the tie timber and log were wet with steam, ordinary caution called upon him to appreciate that danger. He knew that in cold weather in this open shed, steam or vapor would rise from this hot liquor. The point is, it was for the plaintiff to show by direct testimony or as a fact fairly deducible from the surrounding and complementary facts that Scheir exercised the caution which the conditions demanded. We are left wholly to speculation or conjecture upon this aspect of the case, for the inferences do not enlighten us.

We think the declaration made by Scheir to the engineer in the engine room, stating that he was scalded and that the plank slipped throwing him in, was competent. This engine room was sixty or seventy feet from the vat, and Scheir ran there in intense pain and spontaneously cried out as stated. This was closely connected

with the transaction and was the natural exclamation of a man in great agony and suffering and we think it may be said to be part of the *res gestæ*. It is very difficult to enunciate any principle from the authorities on this subject which will fit every case. In order to make a declaration of this kind competent it seems to be settled that it must bear a close relation to the principal transaction and that it must be a spontaneous exclamation, an outburst of the feelings, and not a mere narration of a past event. In *Waldele* v. *N. Y. C. & H. R. R. R. Co.* (95 N. Y. 274) there is an elaborate discussion of the authorities, and the declaration in that case was held to be incompetent, but it occurred some time after the transaction and was a narrative of how it occurred. There was nothing ejaculatory or involuntary in the statement, and we think the case is clearly distinguishable from the present one. In *Patterson* v. *Hochster* (38 App. Div. 398) the decedent was injured, as it was claimed, by falling in an open coal hole upon the defendant's premises. She turned to a person accompanying her and screamed out : "My God  *  *  *  my leg is in the scuttle-hole and it is broke." It was held in that case that the testimony was competent as part of the *res gestæ*, but as there was no other evidence in support of the statement that the coal hole was insecurely covered a verdict could not be based wholly upon that declaration. In the present case there is considerable evidence tending to support the statement of Scheir that the plank slipped precipitating him into the hot liquor. While the question is not entirely free from doubt, we think the evidence was so closely connected with the occurrence that it was competent.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

ADAMS, P. J., WILLIAMS, HISCOCK and DAVY, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide event upon questions of law only, the facts having been examined and no error found therein.

---

NOTE.— The rest of the cases of this term will be found in the next volume, 78 App. Div.— [REP.