(137 App. Div. 96.)

### HOLM v. EMPIRE HARDWARE CO.

(Supreme Court, Appellate Division, Second Department. March 31, 1910.)

MASTER AND SERVANT (§ 235*)—INJURY TO SERVANT—CONTRIBUTORY NEGLI-GENCE.

    A master directed a servant, employed as foreman of carpenters in a factory, to inspect a beam, ropes, and pulleys, etc., to be used in moving the machinery from the factory, and to ascertain the fitness of the appliances. The test in common use in the servant's experience would discover the defect in the beam. There was nothing to show that the beam and tackle were inspected by the servant before using them for the removal of machinery, and while they were so used the beam broke and the servant was injured. *Held*, that the servant was guilty of negligence as a matter of law for failing to ascertain the fitness of the appliances.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. § 235.*]

    Hirschberg, P. J., dissenting.

Appeal from Trial Term, Kings County.

Action by Aurora Holm, as administratrix of Theodore Holm, deceased, against the Empire Hardware Company. From a judgment for plaintiff, and from an order denying motions for new trial, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, BURR, and THOMAS, JJ.

H. Aplington, for appellant.
Frederick S. Martyn, for respondent.

JENKS, J. This action is for negligence under the rules of the common law. The plaintiff's intestate was the servant of the defendant as foreman of carpenters, and of a floor in the defendant's factory. The defendant was about to move its business. An officer of the defendant told the servant that the defendant was about to move, and that he wished the servant to take care of all matters, to inspect everything, and to see that all was right, saying that the servant must not have any accident, and inquiring whether a certain beam and the ropes were strong, and whether the beam was strong enough to carry anything that is let down. The servant answered:

    "That is foolish. That is strong enough to carry, to lift, a house."

The said officer also said to this servant that the latter was the captain, referring to the moving and the men who were to act under him. The same officer, who seems to have been the active man of the corporation, instructed the servant, before any articles whatever, light or heavy, were let down from that beam, the servant must make an inspection of the beam, the ropes, the pulleys, and everything else, to

see that they were safe. He testifies that he gave these instructions to the servant as the foreman, and further told him that after a load was let down and the ropes were up again, and before another load was let down, a similar inspection must be made of everything connected with it. He testifies that he did not know how the articles in the factory were lowered on the day of the moving, although he knew that the tackle and the beam were used for that purpose; but as to the particular piece of machinery hereinafter mentioned, that was on it when the beam gave way, he did not know that it was being lowered by the beam, he did not authorize that particular piece of machinery to be thus lowered, and that he did not know but what it would be brought down on the elevator. There is evidence that there was a lift in the factory which was usable for the carriage of freight.

This beam extended from the roof of the factory over the street. It had been used for four years to lower by tackle ice boxes manufactured by the defendant. Four years before, the defendant had bought it, as the best that money could buy, from a shipyard, through a servant who was an experienced carpenter. It was of white oak, 10x12 inches, and had been laid on the flat roof of the factory, to project through a brick coping a foot thick. It was tightly incased in the coping by the bricks and mortar. Upon the day following the said conversation between the master and servant the moving out began. The beam and tackle were used to lower certain pieces of machinery. After several pieces had been lowered, the beam broke under the strain of another piece, and a part of the apparatus struck and killed the servant who was then engaged in that work. The break was at the point where the beam passed through the brick coping, and the break extended diagonally to the edge of the coping. Examination at that point revealed rot within. The expert witness for the plaintiff testifies that the rot as described to him was the result of from two to four years' decay, and that it was caused by the confinement of the moisture, which was absorbed or which was naturally in the timber, by the close incasement of the beam in the brick coping. He testifies that the proper construction was to pass the beam through the coping by an opening larger than the beam, protected by an iron casing, as the beam would not then have rotted nearly as soon, and the deterioration throughout the beam would have been of even quality. He further testified that "the ordinary and usual test" in common use in his experience, and one that had been used for years, was "the auger test," by boring diagonally into the inclosed part of the beam, to ascertain by the borings the character of the wood, and that, after timber had been inclosed for two years in a wall a foot thick, that test should be made every six months. There is evidence that the beam appeared perfectly sound, that visual inspection of it had been made from time to time, and that the master had given very general directions for inspection from time to time. The question submitted to the jury was whether the master had used reasonable and ordinary care to ascertain the condition of this beam.

I think that the conduct of the servant as shown by this record is fatal to the judgment. There is no evidence that the servant heeded

his master. For aught that appears, he used this beam and tackle without regard to these cautions, or without obedience to these commands of the master. The beam and its tackle were about to be put to unusual use. The servant had no reason to believe that the master proposed to furnish, or that he did furnish, a beam suitable for that work, in that the master had fulfilled all of his obligations with respect thereto, including inspection; for the master expressly charged him with the duty of ascertaining the fitness of the apparatus, including inspection. That very duty was cast upon the servant by a special order. Shearman & Redfield on Negligence (5th Ed.) § 217, says:

"The duty of inspection and inquiry may be cast upon the servant by special contract, or by general rules or special orders, brought home to his notice and giving him reasonable opportunity for compliance, and to the extent to which such investigation is within his reasonable capacity."

Here was a foreman of carpenters, charged on the day before the proposed use with the duty of test and inspection of a beam of wood which the plaintiff's own expert says could have been found defective by the ordinary and usual test in common use in his experience and one used for years. Labatt on Master and Servant, § 416, lays down the rule:

"The duty of inspection may be cast on the servant by express contract, or by general rules, or by special orders of which he is notified. In other words, it is permissible for the master to impose, and for the servant to accept, by mutual understanding, the burden of such an inspection as the latter is competent to make."

And the same author further says:

"He is manifestly not warranted in assuming that he is not exposed to any abnormal dangers, where he has actual knowledge that one of the master's duties has not been performed, nor where he has been expressly warned to examine the appliance in question. He will not be heard to say that his ignorance of a danger was excusable, if it could have been discovered by a reasonable use of his faculties of observation"—citing Senior v. Ward, 1 El. & El. 385, and other cases.

See, too, Shields v. N. Y. Cent. & H. R. R. R. Co., 133 N. Y. 557, 30 N. E. 596; Kilkin v. N. Y. Cent. & H. R. R. R. Co., 76 App. Div. 529, 78 N. Y. Supp. 568, affirmed 177 N. Y. 566, 69 N. E. 1125; Cooper v. Butler, 103 Pa. 412.

I advise that the judgment and order be reversed, and that a new trial be granted; costs to abide the event. All concur, except HIRSCHBERG, P. J., who dissents.