Cooke, J.
On this appeal, Burnis Caviness contends that two evidentiary errors during trial, resulting in his conviction of manslaughter in the second degree, warrant reversal. One involves the admissibility of a spontaneous declaration by a bystander; the other, the allowance of cross-examination of defendant as to a prior conviction.
In the late afternoon or early evening of March 11, 1972, William Earl Cephus was shot during the course of a heated exchange and struggle with defendant in front of a Brooklyn grocery or small supermarket. Death followed that evening, and within the month defendant was indicted for murder.
Dorothy Greene, called by the prosecution, related: that she . was seeing defendant socially; that she went to the store on the day in question as she had a dinner engagement with defendant; that as they left the market she saw Cephus approaching from across the street; that she heard defendant and Cephus arguing, "loud voices and loud words” being exchanged; that she next heard a "pow pow” like a shot; that defendant and Cephus were about four feet apart, facing each other; that just prior to hearing the "pow pow” she observed defendant "go to his side” by movement of his hand or arm, but did not see anything in his hand or in Cephus’ hand; that she saw Cephus clutching himself, stagger and fall near the store doorway and that she "said out loud 'Burnis shot Earl.’ ” The store proprietor, after narrating a conversation had with defendant in the market, testified that following defendant’s departure he heard two shots, that he turned around and saw Cephus falling in front of the door, and that as he stooped over Cephus he saw defendant get in his car and speed away. Defendant took the stand as the sole witness in his behalf and told of meeting and having words with Cephus outside the store. Defendant then testified: that there came a time when they were but one to two feet apart; that, when Cephus went for his pocket and came out with something which looked like a gun, defendant grabbed him; that he then heard a couple of shots; that he panicked and went to his car; that he did not have or fire a gun; and that Cephus had a gun. On rebuttal, Dr. Di Maio, the medical examiner who performed the autopsy and based on his findings of no marks on the skin except for the perforation, opined that the fatal shot would have to *230 have been fired approximately 12 inches away, although he conceded that an air gun which expels a projectile or missile could cause penetration of the body without making powder burns.
During direct examination Greene, replying to the question "What did you see after you heard the pow pow?”, testified "I saw Earl clutching himself and stagger, and I went behind him. In fact, I was in shock, and he fell to the doorway of the store. I said out loud, 'Burnis shot Earl.’ ” A defense objection to the answer was overruled and defendant contends that the court’s failure to strike the volunteered last sentence of the response, as inadmissible hearsay, was reversible error.
Hearsay, the exclusion of which is perhaps the best known feature of Anglo-American law (Fisch, New York Evidence, § 756), has been subjected to a variety of definitions. Rule 63 of the Uniform Rules of Evidence, approved by the American Law Institute and American Bar Association, defines hearsay' evidence as "[ejvidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated.” This enunciation must be read in connection with the connotation accorded to "statement” in rule 62, that it "means not only an oral or written expression but also non-verbal conduct of a person intended by him as a substitute for words in expressing the matter stated” (Comment, Uniform Rules of Evidence, rule 63), and follows Wigmore in defining hearsay as an extrajudicial statement which is offered to prove the truth of the matter stated (5 Wigmore, Evidence [3d ed], § 1361; see, also, Richardson, Evidence [Prince—10th ed], § 200; McCormick, Evidence [2d ed], § 245, p 584; 1 Mottla, New York Evidence, § 187; Morgan, Hearsay and Non-Hearsay, 48 Harv L Rev 1138, 1144).
Spontaneous declarations, frequently referred to with some inexactitude as res gestae declarations (e.g., Ingersoll v Liberty Bank of Buffalo, 278 NY 1, 9; Handel v New York R. T. Corp., 252 App Div 142, affd 277 NY 548; Scheir v Quirin, 77 App Div 624, 628-629, affd 177 NY 568; see 6 Wigmore, Evidence [3d ed], § 1745 et seqSpontaneous Exclamations in the Absence of a Startling Event, 46 Col L Rev 430; 56 ALR2d 372), form an exception to the hearsay rule. It is established that spontaneous declarations made by a participant while he is under the stress of nervous excitement resulting from an injury or other startling event, while his reflective powers are stilled and during the brief period when considerations of self- *231 interest could not have been brought fully to bear by reasoned reflection and deliberation, are admissible as true exceptions to the hearsay rule (People v Marks, 6 NY2d 67, 71; People v Del Vermo, 192 NY 470, 483; Schner v Simpson, 286 App Div 716, 719; 6 Wigmore, Evidence, §§ 1745, 1747; 1 Mottla, New York Evidence, § 252). They are admitted because, as the impulsive and unreflecting responses of the declarant to the injury or other startling event, they possess a high degree of trustworthiness, and, as thus expressing the real tenor of said declarant’s belief as to the facts just observed by him, may be received as testimony of those facts (People v Marks, supra, pp 71-72; Richardson, Evidence [Prince—10th ed], § 281). The question whether a declaration conforms to the spontaneity requirements of the rule is a preliminary question to be determined by the Trial Judge, not the jury, the test being whether the declarant was so influenced by the excitement and shock of the event that it is probable that he or she spoke impulsively and without reflection rather than reflectively and with deliberation (People v Marks, supra, pp 72, 74-75; Fisch, New York Evidence, § 1000, p 494).
Where participation and the declaration are by the same person, all jurisdictions agree that the declaration is admissible if it satisfies the requirements of the hearsay exception for spontaneous exclamations, but, in the courts of a few States including New York, declarations have been excluded if made by persons not participating in the act, such as a bystander (6 Wigmore, Evidence [3d ed], § 1755; Richardson, Evidence [Prince—10th ed], § 284). The confusion of spontaneous declarations with res gestae has resulted in limiting the admissibility of spontaneous declarations to those of participants (Richardson, Evidence [Prince—10th ed], § 284; Fisch, New York Evidence, § 1000), some courts concluding that the declaration is inadmissible if made by a nonparticipant on the theory that it constitutes no part of the res gestae (e.g., Felska v New York Cent. & Hudson Riv. R. R. Co., 152 NY 339, 342-343; Butler v Manhattan Ry. Co., 143 NY 417, 423; Ehrhard v Metropolitan St. Ry. Co., 69 App Div 124; Kuperschmidt v Metropolitan St. Ry. Co., 47 Misc 352), with others determining that the statements are narratives (e.g., Schoenfeld v Long Is. R. R. Co., 277 App Div 780; Nelsen v Hennebique Constr. Co., 164 App Div 893). It is time that New York abandon this unjustifiable evidentiary stance for, as observed by Dean Prince: "Assuming that the non-participant is shown to have *232 had adequate opportunity to observe the event, there is no sound reason why his spontaneous exclamation should not be admitted, for the unexpected exciting event may just as effectively produce a natural and spontaneous declaration by a bystander as by a participant” (Richardson, Evidence [Prince —10th ed], § 284; see, also, 6 Wigmore, Evidence [3d ed], § 1755; Thornton, Spontaneous Declarations—New York Rule, 10 Brooklyn L Rev 280). Under the circumstances, including the declarant’s proximity to the occurrence, which furnished an adequate opportunity to observe (see McCormick, Evidence [2d ed], § 297, pp 707-708; 2 Jones, Evidence, § 10.1, pp 253-254; see, also, Watson v State of Alaska, 387 P 2d 289, 291 [Alaska]), the professed shock, and the immediacy of the utterance following the event, the court did not err in failing or refusing to strike the exclamation. Indeed in this instance, although not essential for admissibility, there was an added assurance of reliability since the proof of the declaration was by the declarant who, in taking the stand, was subject to cross-examination.
Defendant had two prior convictions: one, in 1951 for possession of a gun which he had brought from a southern State where possession was legal and for which he served a five-month sentence; the second, in 1962 for reckless driving or driving while intoxicated for which a $100 fine was imposed. At the close of the People’s case, defendant sought a ruling prohibiting an inquiry into these convictions on cross-examination of defendant on the grounds of remoteness and prejudice. Despite an indicated reluctance, the trial court felt compelled to deny the application, stating it "must follow the law as laid down by our Courts”, to which ruling an exception was taken. On direct examination defendant admitted the two convictions and on cross-examination the prosecutor also inquired about them.
Consistently, courts have held that the extent to which disparaging questions, not relevant to the issues but bearing on the credibility of a witness may be put upon cross-examination is discretionary with the trial court and its rulings are not subject to review, unless it clearly appears that the discretion has been abused (People v Duffy, 36 NY2d 258, 262-263; People v Schwartzman, 24 NY2d 241, 244-245, cert den 396 US 846; People v Sorge, 301 NY 198, 202; La Beau v People, 34 NY 223, 230). As stated so well in People v Sandoval (34 NY2d 371, 375), "a balance must * * * be struck *233 between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant’s credibility on the one hand, and on the other the risk of unfair prejudice to the defendant, measured both by the impact of such evidence if it is admitted after his testimony and by the effect its probable introduction may have in discouraging him from taking the stand on his own behalf’.
"[C]ross-examination with respect to crimes or conduct similar to that of which the defendant is presently charged may be highly prejudicial, in view of the risk, despite the most clear and forceful limiting instructions to the contrary, that the evidence will be taken as some proof of the commission of the crime charged rather than be reserved solely to the issue of credibility” (People v Sandoval, supra, p 377). The testimony submitted by the opposing parties created a central factual issue which pervaded the trial—the identity of the possessor of the firearm which inflicted the mortal wound. The 1951 conviction had little, if any, logical bearing on defendant’s credibility at the 1973 trial. Since the possession of the weapon was such a crucial point, since defendant was never seen holding or firing a gun nor was one introduced in evidence, since the prosecution’s proof was far from overwhelming, and since in the context of this case there was a significant probability that the permitted evidence would be taken, improperly it is true, as some proof of the commission of the crime charged, not merely going to credibility, the disclosure of the gun possession conviction was highly prejudicial and was far from harmless (see People v Crimmins, 36 NY2d 230, 238, 242; see, also, People v President, 47 AD2d 535). The trial court erroneously overlooking its discretionary power, recognized the inherent prejudice, in colloquy with counsel before ultimately ruling, when it was observed: "If I permit the jury to weigh his [defendant’s] having a gun in 1951, some twenty years ago, it might cause the jury to infer that he did have a gun in 1972.”
Because of the prejudicial error in permitting proof as to the 1951 conviction, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.