Wachtler, J.
(dissenting). This case involves an unprovoked and senseless attack on one member of an interracial couple, late at night on a city street. It was, to borrow a phrase from the majority, “capable of arousing a juror’s inchoate fears about urban racial violence.” The majority, however, does not find the evidence of the crime objectionable. What it finds inflammatory and reversible error is the fact that the black woman companion of the victim was permitted to testify, over objection, that after the white victim had staggered back to the taxi, and they were about to leave for the hospital, someone in the defendant’s group shouted, “We don’t want no white mother f — ers on 100th Street.”.
Although the statement does indeed show a racial motive for the assault, that alone provides no basis for excluding it from the jury’s consideration. The People are entitled to show a defendant’s motive, even though it may involve evidence of racial hatred (see, e.g., People v Moore, 42 *807 NY2d 421, 428-429). This, of course, is inflammatory, but that is generally true of any motive. Criminal acts, particularly street assaults are not motivated by the highest principles.
The victim is an Australian businessman who, while visiting New York City in 1976, met Sylvia Gutloff at a birthday party in a Manhattan bar. At approximately 2 o’clock in the morning he escorted her home by taxi. On the sidewalk in front of the building adjoining hers, Gutloff saw four black youths including the defendant, who had long lived in the neighborhood, had gone to school with her and whose sister was a friend of hers. The victim accompanied her to the vestibule and, while standing there, she saw four “shadows” pass across the front of the door. As the victim left two of the four youths grabbed him and began punching him. He broke away and ran across the street to a vacant lot, pursued by the defendant and another. There they grabbed him again, near a street light, and while one of them held his arms behind his back, the other stabbed him in the chest. They made no effort to take anything from him; as he fell to the ground they simply walked away and stood next to their two companions.
After going with the victim to the hospital,[1] Gutloff returned with the police who found the defendant and three others standing in a nearby doorway. Two of them, including the defendant, were arrested and charged with assault and criminal possession of a weapon.
That the defendant was motivated by hatred may, of course, be shown by statements he has made (Richardson, Evidence [10th ed — Prince], § 288). But this may also be established circumstantially by his close association with others who hated the victim personally or as a member of a class (see, e.g., People v Moore, 42 NY2d 421, supra; 2 Wigmore, Evidence, § 390, p 426; cf. 6 Wigmore, Evidence, § 1791, p 326).
An excited utterance made at the time of a startling event is generally considered trustworthy, even if made by *808 one who was only a bystander (People v Caviness, 38 NY2d 227). In this case, if the defendant did not make the statement it was made by his codefendant or one of the two youths who did not actively participate in the assault. They were more than bystanders who could only be reasonably expected to describe the physical events they observed. They were defendant’s companions at 2 o’clock in the morning on an otherwise deserted city street. They moved with him as a group to the doorway and were waiting there when the victim came out. They stood again as a group when one of them announced that the assault was meant as a warning to instrusive whites. If they were not actually conspirators, it would nevertheless be incredible to believe that they were not, at least, privy to the defendant’s motives. Thus the trial court did not err in permitting the jury to hear the remark made by the defendant or his companions showing that the assault was racially motivated.[2]
By fine tuning the rules of evidence, and taking an unrealistic view of what is relevant or probative in cases involving street violence, the court may succeed in removing the spectre of urban racial violence from the courtroom; however, those who commit crimes of violence out of racial hatred should not be permitted, in court, to conceal their motives behind unrealistic rules of evidence.
The order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Gabrielli, Jones, Fuchsberg and Meyer concur in memorandum; Judge Wachtler dissents and votes to affirm in an opinion in which Judge Jasen concurs.
Order reversed, etc.

. The other contention raised by the majority that the defendant was denied his right of confrontation with respect to testimony “impliedly” accusing him or his codefendant of an uncharged crime, for having “hurt” one of the witness’ relatives, was never raised at trial. There the defendant’s only argument was that this particular testimony was “unresponsive” to a question asked. Thus the issue which the defendant raises on appeal does not present a question of law for our review because the court did not rule on it and was not given an opportunity to consider the alleged implication at a time when the claimed error could have been avoided or corrected (GPL 470.05; cf. People v Thomas, 50 NY2d 467).