92 N.Y.2d 565 (1998)
706 N.E.2d 1173
684 N.Y.S.2d 149
The People of the State of New York, Respondent,
v.
Frank Fratello, Appellant.
Court of Appeals of the State of New York.
Argued October 21, 1998
Decided December 1, 1998.
Dublirer, Haydon, Straci & Victor, New York City (Paul A. Victor and Flora Edwards of counsel), for appellant.
Robert T. Johnson, District Attorney of Bronx County, Bronx (Karen P. Swiger and Peter D. Coddington of counsel), for respondent.
Chief Judge KAYE and Judges BELLACOSA, CIPARICK and WESLEY concur with Judge LEVINE; Judge SMITH dissents and votes to reverse in a separate opinion.
*568 LEVINE, J.
Defendant was convicted, following a bench trial, of attempted murder, second degree, assault, first degree, criminal *569 use of a firearm, first degree, and criminal possession of a weapon, second and third degrees. All of the charges arose out of the shooting of Guy Peduto shortly after 2:00 A.M., December 7, 1993, during a car chase in the Throgs Neck section of the Bronx. Peduto received serious head and body wounds. The rear window of the Pontiac sedan he was driving was shot out and there were multiple bullet holes in the automobile. When he was hit, Peduto lost control of the vehicle and crashed into two cars parked in a driveway. His assailants fled in their vehicle, leaving two Acura hubcaps and five 9 millimeter bullet casings at the scene.
Two out-of-court statements by Peduto, naming defendant as one of his attackers, were admitted into evidence under the "excited utterance" exception to the hearsay rule (see, People v Nieves, 67 N.Y.2d 125, 135). The first of Peduto's accusatory declarations was made to Dominic Cleary, a layperson who was walking to his home nearby when he heard gunshots and the crash, and came to Peduto's assistance. The second statement implicating defendant was made about 10 minutes later to Officer Dennis Gardner, the first of the police to arrive at the scene.
Peduto was not called to the stand by the prosecution, having recanted his previous identifications of defendant in an affidavit submitted by the defense before the trial. Instead, Peduto was called as a defense witness. At the time of the trial, he was in a United States detention facility awaiting trial on Federal criminal charges. In his direct testimony he denied defendant was one of the persons who shot him. On cross-examination by the prosecution, he denied having told anyone that defendant had shot him. He described in detail the physical appearance of the person he saw firing at him. Peduto also acknowledged a 15-year close friendship with defendant and admitted that he had an extensive criminal record arising out of his activities as a carjacker. He invoked his privilege against self-incrimination in response to other questions about specific car thefts, and his criminal associates, including one Glicerio Castaldo.
The People introduced rebuttal evidence that Peduto had told another police officer, John Fitzgerald, both at the scene of the incident and after his removal to a hospital, that defendant was one of the shooters. Another officer, Detective George Wood, testified to a later conversation with Peduto at the hospital, after Peduto had been told by hospital personnel that he would survive the shooting. Peduto told Detective Wood *570 that he knew the identity of the shooter but refused to name him, explaining that "I will take care of it myself." The People also called Glicerio Castaldo as a rebuttal witness. Castaldo had been a criminal confederate of Peduto who became an FBI informant under a plea agreement. He recounted a visit with Peduto after he left the hospital. Peduto had described in detail how defendant drove up beside his car in a white Acura Legend when the shooting began, both defendant and another acquaintance firing at him. Peduto also told Castaldo that now that he had recovered from his wounds, "he had to go get it straightened out."
The trial court sitting without a jury rendered a guilty verdict. The Appellate Division affirmed (243 AD2d 340). A Judge of this Court granted defendant leave to appeal, and we now also affirm.
In urging reversal, defendant's initial attack is on the admissibility, under the excited utterance exception, of Peduto's extrajudicial statements identifying defendant as his assailant. Defendant's arguments are unavailing. The testimony of Cleary was that he came to Peduto's aid less than a minute after the car crash. Peduto was bleeding profusely, moaning in pain and begging for help. Peduto twice named defendant when Cleary asked who shot him. Officer Gardner, who assisted removing Peduto from the vehicle and transferring him to an ambulance, stated that Peduto was crying hysterically, repeatedly asking whether he was going to die. Peduto identified defendant as the person who shot him, and repeated the name over and over again. He referred to defendant as a one-time friend. Peduto also told Gardner that the assault vehicle defendant drove was a white Acura.
The foregoing evidence represents near-classic examples of the excited utterance exception. Thus, the trial court could readily conclude that Peduto's statements were admissible under that exception as "spontaneous declarations made by a participant while he is under the stress of nervous excitement resulting from an injury or other startling event, while his reflective powers are stilled and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection and deliberation" (People v Caviness, 38 N.Y.2d 227, 230-231). That the declarations were made in response to questioning, and that there was an approximately 10-minute interval from the happening of the event until the second declaration was made to Officer Gardner, would not impair their admissibility, since neither of these *571 factors detracted from their spontaneity under the circumstances as described by the witnesses to whom Peduto spoke at the crime scene (see, People v Cotto, 92 N.Y.2d 68, 79; People v Edwards, 47 N.Y.2d 493, 497-498).
Defendant, however, contends that the circumstances of a nighttime attack during a high-speed car chase demonstrated that Peduto lacked the capability of recognizing him as one of the attackers. To be sure, for an excited utterance to be admissible, it must be inferable that the declarant had an opportunity to observe personally the event described in the declaration (see, 6 Wigmore, Evidence § 1751, at 222 [Chadbourn rev 1976]). In most instances, that requirement is satisfied self-evidently from the circumstances that the declarant was an actual participant in the event which is the subject of the declaration (id.).
Here, the evidence permitted the trial court reasonably to infer that Peduto had a sufficient opportunity to observe who attacked him and to identify defendant as one of the shooters. Peduto had been a close personal friend of defendant for many years. The car chase was extended over more than a city block, which was illuminated by street lights. Peduto, in his statement to Officer Gardner, was apparently able accurately to identify the crime vehicle as a white Acura Legend, as confirmed by the hubcaps found at the scene. Moreover, Peduto testified that he could and did observe one of the attackers through his rearview mirror during the pursuit sufficiently to describe his appearance in detail.
The trial court was charged with the responsibility of resolving a mixed question of law and fact in its initial determination of the admissibility of the Peduto declarations as excited utterances (see, People v Edwards, supra, 47 NY2d, at 497; People v Caviness, supra, 38 NY2d, at 231). In making that initial determination of admissibility, the trial court necessarily rejected defendant's objection based upon the asserted inability of Peduto to have observed the defendant as one of the shooters. The Appellate Division, in upholding the admissibility of Peduto's declarations under the excited utterance exception, agreed: "The declarant was a participant in the events, clearly speaking from his personal observation" (243 AD2d, at 340, supra). The undisturbed findings by the courts below that Peduto had an opportunity to observe who attacked him have support in the record and are, thus, beyond our further review (see, People v Cotto, supra, 92 NY2d, at 76-77).
*572 Nonetheless, defendant asserts that the trial court committed reversible error in connection with the admission of Peduto's statements, in refusing to receive (1) expert testimony on night visual perception under Peduto's circumstances; and (2) evidence, disclosed by the prosecution to the defense, that Peduto was biased against defendant because he feared retaliation for his own previous assault on defendant. It was well within the trial court's sound discretion to reject expert testimony on a matter (night visibility) that is a subject of common experience of lay triers of fact (see, People v Mooney, 76 N.Y.2d 827, 828; People v Cronin, 60 N.Y.2d 430, 433).
Nor do we discern any error in the trial court's treatment of Peduto's claimed bias against defendant on the admissibility of his declarations. Generally, the bias of an excited utterance declarant functions as a basis for impeachment of the declaration, thus pertinent to the weight, rather than admissibility of the declaration (see, 6 Wigmore, Evidence, op. cit., § 1751, at 224). That was the ruling of the trial court here. To the extent that defendant contends that Peduto's bias prompted him to name defendant without actually having made any observation of his attacker, defendant is foreclosed by the undisturbed findings, already discussed, that Peduto's identification was based upon personal observation.
Defendant raises one other point requiring extended discussion  his challenge to the sufficiency of the evidence to support a guilty verdict. Specifically, defendant points to the fact that the prosecution's entire case was based upon Peduto's spontaneous declarations naming defendant as one of his assailants. Defendant notes that Peduto's extrajudicial accusatory statements were directly contradicted by his in-court testimony, in which he denied that defendant shot him and swore that another man, whose appearance was drastically different, was the actual shooter. Defendant claims that these conflicting versions of the facts rendered by Peduto require reversal and dismissal as a matter of law. Defendant relies upon the rule articulated most recently in People v Jackson (65 N.Y.2d 265, 272):
"When all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing both to guilt and innocence, the jury is left without basis, other than impermissible speculation, for its determination of either." (See also, People v Foster, 64 N.Y.2d 1144, 1147; People v Stewart, 40 N.Y.2d 692, 699; *573 People v Reed, 40 N.Y.2d 204, 208-210; People v Ledwon, 153 N.Y. 10.)
We, however, do not read Jackson and its predecessors as setting up a per se rule to be applied uncritically in all such cases without an evaluation of the nature and quality of the conflicting, inculpating and exculpating renditions of the event by the single prosecution witness. As explained in Jackson, dismissal of a directed verdict because of hopelessly contradictory testimony from the single prosecution witness follows from principles related to "the relative functions of judge and jury respecting reasonable doubt" (65 NY2d, at 271). The Jackson decision quotes extensively from the District of Columbia Circuit's decision in Curley v United States (160 F.2d 229, cert denied 331 US 837, reh denied 331 US 869) in explaining that the rule announced in Jackson is derived from general principles governing when a court should take a criminal case away from the jury.
As explained in the quoted excerpts from Curley, while the jury has the authority to determine credibility, weigh evidence and draw inferences from proven facts, "`[i]t is the function of the judge to deny the jury any opportunity to operate beyond its province. The jury may not be permitted to conjecture merely, or to conclude upon pure speculation'" (People v Jackson, supra, at 271 [quoting Curley v United States, supra, 160 F2d, at 232]). Thus, the decision of the Trial Judge to take the case from the jury by dismissal or directed verdict of acquittal will turn on the foregoing distinctions between mere conjecture and evidence-based conclusions. "`In a given case * * * that determination may depend upon the difference between pure speculation and legitimate inference from proven facts'" (People v Jackson, at 272 [quoting Curley v United States, at 233]).
In Jackson we explained how the foregoing general principles of the Curley opinion might apply to a case where the only prosecution witness has given totally irreconcilable versions of the events  one incriminating, the other exonerating, the defendant. In such a case, we said, when the irreconcilability affords no foundation in the proof for the jury to resolve the conflict in the witness's testimony, dismissal is warranted because "the jury is left without basis, other than impermissible speculation" to decide guilt or innocence (65 NY2d, at 272).
A corollary of the Jackson rule on self-contradictory witness's testimony, and its rationale, however, is that when *574 the jury, acting within its rightful province of determining credibility, weighing evidence and drawing justifiable inferences from proven facts, has an objective, rational basis for resolving beyond a reasonable doubt the contradictory inculpating and exculpating versions of the events given by the witness, its determination of guilt is no longer based on "impermissible speculation" and should be upheld. We consider this the sounder view, which is the analysis adopted in several other jurisdictions, rejecting a per se rule of automatic dismissal because of inconsistency between the witness's trial testimony and earlier statements (see, Di Carlo v United States, 6 F.2d 364 [2d Cir] [L. Hand, J.]; People v Cuevas, 12 Cal 4th 252, 906 P2d 1290; State v Mancine, 124 NJ 232, 590 A2d 1107; Acosta v State, 417 A2d 373 [Del]; see also, 2 McCormick, Evidence § 251, at 118-120 [4th ed]; contra, United States v Orrico, 599 F.2d 113 [6th Cir]).
Indeed, we faced an analogous issue in People v Cotto (supra). There, as here, an eyewitness at trial recanted an earlier accusatory statement against defendant, and at the Sirois hearing to determine whether his changed position was the result of defendant's witness-tampering, the witness also recanted earlier statements to law enforcement authorities that he had been threatened. Nonetheless, we upheld, as amply supported by the evidence, the trial court's reasoned resolution of the conflicts in the witness's versions, crediting his out-of-court statements that he was coerced (see, People v Cotto, supra, 92 NY2d, at 76).
Here, the trial court as trier of fact had a sufficient, non-speculative basis to resolve the contradictions between Peduto's out-of-court statements implicating defendant in the crimes, and his exonerating testimony at the trial. First, as excited utterances, Peduto's out-of-court accusatory declarations, made without opportunity for reflection while he was crying hysterically and repeatedly asking whether he was going to die, could rationally and objectively have been credited by the trial court as inherently more reliable than Peduto's later versions, formulated once "there ha[d] been time to contrive and misrepresent" (People v Brown, 80 N.Y.2d 729, 736).
Second, as the Appellate Division found, the cross-examination of Peduto and other impeachment evidence gave the trial court an "ample basis [for] * * * discrediting the victim's highly suspect and thoroughly impeached efforts, as a defense witness, to exculpate defendant" (243 AD2d, at 340, supra). *575 Thus, based upon the cross-examination, as well as the testimony of Detective Wood and Glicerio Castaldo, the trial court could well have concluded that Peduto perjured himself in his exculpating testimony in conformity with the moral code of his criminal subculture  of noncooperation with official law enforcement efforts to prosecute the perpetrator of the crimes against him, in favor of resort to retributive self-help (see, People v Chavez, 26 Cal 3d 334, 364, 605 P2d 401, 420 [in light of witness's statement that "the whole matter `should be settled in the streets' rather than in court * * * the jury had a sound basis for discounting the witness' trial testimony" in crediting his prior accusatory statement]). Thus, the rule of People v Jackson and its predecessors does not afford a basis to disturb the trial court's verdict of guilt.
Defendant's remaining arguments, including the contention that the People failed to turn over materials as required by Brady v Maryland (373 US 83) and People v Rosario (9 N.Y.2d 286), are either unpreserved or without merit. Accordingly, the order of the Appellate Division should be affirmed.
SMITH, J. (dissenting).
Because I believe the evidence was insufficient to convict the defendant of attempted murder and related crimes, I dissent. The sole evidence against the defendant was a repudiated statement that the shooter was defendant Frank Fratello. Made by the victim, Guy Peduto, at the scene of the crime, the statement was admitted at trial as an excited utterance. Because the circumstances of this case cast doubt on the reliability of the witness and the statement, the evidence was insufficient and the indictment should be dismissed.
Peduto was shot from behind during a high speed car chase in the County of the Bronx, New York City on December 7, 1993. During the incident Peduto's car crashed into two other vehicles which were parked in a driveway of a private residence. A witness to the incident, Dominic Cleary, went to the car which Peduto was driving and asked him what happened. The victim indicated that he had been shot by Frank Fratello. By an affidavit signed on December 13, 1993, Peduto repudiated the statement and insisted that Frank Fratello had not shot him. At trial Peduto testified that defendant had not been the shooter.
Normally, a statement is admitted as an excited utterance because it is made under stress and under conditions which indicate that it is reliable since it is made without reflection. In People v Edwards (47 N.Y.2d 493, 497) we stated:

*576 "The admissibility of an excited utterance is entrusted in the first instance to the trial court. In making that determination, the court must ascertain whether, at the time the utterance was made, the declarant was under the stress of excitement caused by an external event sufficient to still his reflective faculties, thereby preventing opportunity for deliberation which might lead the declarant to be untruthful. The court must assess not only the nature of the startling event and the amount of time which has elapsed between the occurrence and the statement, but also the activities of the declarant in the interim to ascertain if there was significant opportunity to deviate from the truth. Above all, the decisive factor is whether the surrounding circumstances reasonably justify the conclusion that the remarks were not made under the impetus of studied reflection."
Here there was animosity between defendant and Peduto. The evidence was that defendant and Peduto knew each other from childhood and had been involved together in criminal activity. However, there had been a falling out between the two to such an extent that the victim had allegedly shot defendant and attempted to kill one of the defendant's relatives. From the time of that incident, Peduto had to fear for his own safety. From the time the car chase began, it was reasonable for Peduto to suspect that the defendant was involved and to name him as the perpetrator whether or not there had been an actual sighting. Second, given the history and character of Peduto, any statement which he made, inculpatory or exculpatory, could not be found reliable beyond a reasonable doubt and constitute the sole basis for convicting defendant.
In none of the cases cited by the majority or the People was a repudiated statement, admitted as an excited utterance, used as the sole basis for conviction. In People v Brown (70 N.Y.2d 513) statements by the deceased made to his mother and police prior to his death, identifying the persons who shot him, were admitted into evidence as excited declarations. The assailants were seen running from the scene of the shooting. The victim never repudiated the statement.
In People v Cotto (92 N.Y.2d 68) a statement by the deceased identifying the shooter, made to the police as he lay dying in an ambulance, was admitted as an excited utterance. In that case the identification by an eyewitness was also admitted *577 even though the witness refused to identify the defendant at trial. The statement by the dying victim was never repudiated.
In People v Edwards (47 N.Y.2d 493, supra) the statements of a dying victim identifying the defendant as the person who stabbed her were admitted as excited utterances. The defendant was seen hurrying down the fire escape from the victim's apartment. The victim never repudiated the statement.
In these cases the excited utterances were admissible because of their inherent reliability, the stress of the immediate situation and the fear of death. In each of these cases the victim died so that only their identifying statements remained. Here, in contrast, the victim is not dead and repudiated the statement accusing defendant of the shooting.
As stated, the reliability of Peduto is in doubt whatever his testimony. But the majority also discounts the rule followed in this Court that conflicting testimony by one witness is an insufficient basis on which to convict a defendant. "When all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing both to guilt and innocence, the jury is left without basis, other than impermissible speculation, for its determination of either" (People v Jackson, 65 N.Y.2d 265, 272; see also, People v Stewart, 40 N.Y.2d 692, 699 [irreconcilable testimony by a single witness on the cause of death left the jury with no basis for concluding beyond a reasonable doubt that the defendant's assault caused the death of the victim]).
Under the circumstances of this case, some type of corroboration was required to find the defendant guilty beyond a reasonable doubt. While corroboration is generally not necessary in admitting evidence of an excited utterance because its reliability is inherent in the circumstances in which it is made, those safeguards are absent here. In People v Brown (80 N.Y.2d 729, 736) this Court required corroboration of statements made by a witness during a burglary and admitted at trial under the present sense exception to the hearsay rule. The statements consisted of the 911 tape of a telephone call made by the witness to the police. Just as the present sense impression required some corroboration in Brown, so here a repudiated identifying statement by a person with a motive to lie should be corroborated.
For these reasons, I dissent.
Order affirmed.