Van Voobhis, J.
Appellant has been convicted of murder in the second degree for having shot and killed one Pickens on June 16,1955, in the basement of 254-256 West 146th Street, New York City. The Appellate Division has affirmed. The verdict of the jury is supported by evidence. Appellant advances two points (1) that the trial court erroneously excluded evidence of a declaration by the victim exculpating appellant, and (2) that the prosecutor made prejudicial statements in his summary to the jury. These points are discussed in the order named.
Patrolman Muldoon testified that at 10:30 a.m. on the day of the homicide he was directed by radio to drive his patrol car immediately to 260 West 146th Street, where the wounded man had been seen by a person who notified the police. On his way to that address, Muldoon observed that a crowd had gathered around 2742 Eighth Avenue, where he stopped his ear and found Pickens lying in the vestibule. He was suffering from a gunshot wound in his left chest which was bleeding. Muldoon had a conversation with Pickens and then took him to the Harlem Hospital where they arrived at 10:40 a.m. There is evidence that the shooting occurred at 10:25 a.m. which was five minutes before the notification of Muldoon, who testified that he talked to Pickens within a minute afterward. Accord *70 ing to this evidence, Pickens’ statement to Officer Muldoon was made six minutes after he had been shot. Muldoon testified that he asked Pickens by whom he had been shot, and wrote the answer on a card which became part of the records of the Police Department. He was interrogated upon the witness stand by defense counsel: “ Q. Did you write on that aided card that the deceased was shot by one Edward Small? ” An objection to this question was sustained. The officer testified that Pickens gave no indication that he was in fear of death at the time. Defense counsel offered the card in evidence, which was deemed marked for identification. This offer was made as a business record of the Police Department under section 374-a of the Civil Practice Act, but objections to the offer and to oral testimony of Pickens’ declaration were sustained. No question has been raised concerning the form of the proof and the ruling of the court was based on the inadmissibility of any statement by Pickens under these circumstances. It is assumed that Pickens told Officer Muldoon that he had been shot by Edward Small.
Appellant’s first point is that this declaration by the deceased apparently exculpating defendant should have been received in evidence as a spontaneous declaration under People v. Del Vermo (192 N. Y. 470). There the defendant was charged with having fatally stabbed one Tony Page in the abdomen. According to the testimony of the principal witness, they were walking on Dominick Street in Borne, New York, three abreast, Tony Page being between defendant and the witness. Defendant told Tony Page, according to this witness, that he had had connection with Page’s wife and was going to have connection again. ‘ ‘ If you want to come and see, ’ ’ said the defendant, “ I will go just right now.” Tony Page responded with an epithet at which the defendant laughed, they walked together a further distance of about two blocks, when the witness saw defendant run and exclaimed: ‘ ‘ What is the matter with that fellow? ” Page walked forward four or five steps and dropped to the sidewalk. The witness inquired, “ What is the matter? ” and Page answered, “ Del Yermo stabbed me with a knife.” The witness helped him to his home, where Page’s wife met him, and there Page repeated in *71 response to her inquiry: “Del Yermo stabbed me with a knife ”, stating that he had been killed. Page died as the result of the wound within several hours. The witness had not seen him stabbed. At the trial the first declaration made to the witness immediately after the stabbing, when Page dropped to the sidewalk, was admitted into evidence as a spontaneous declaration. The later declaration made in the presence of his wife in the house, accompanied by the exclamation “Oh! my poor children! I am going to die. What are my children going to do after this? ” was admitted as a dying declaration. Later, statements to others were admitted as dying declarations.
It is not contended that appellant’s exculpation by the victim was admissible as a dying declaration. Officer Muldoon testified that Pickens did not indicate that he thought that he was going to die. The holding in the Del Vermo case (supra) about spontaneous declarations is addressed to our attention.
Professor Wigmore has analyzed this subject with his usual clarity, distinguishing spontaneous declarations from the doctrine of res gestae. The latter refers to verbal acts, forming part of the transaction itself. A spontaneous declaration, upon the other hand, is a true exception to the hearsay rule (Wig-more, Evidence, § 1745). It is a narrative of a past transaction, although usually of a transaction occurring immediately before. The basis of this exception to the hearsay rule is that the spontaneity of declarations of this kind gives more assurance of veracity than is true of the usual hearsay declaration. Wigmore says (§ 1747, subd. [I]): “This general principle is based on the experience that, under certain circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control * # *. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker’s belief as to the facts just observed by him,- and may therefore be received *72 as testimony to those facts. The ordinary situation presenting these conditions is an affray or a railroad accident. But the principle itself is a broad one.”
It was tersely stated by Bleckley, C. J., in Travelers Ins. Co. v. Sheppard (85 Ga. 751, 775-776) that “What the law altogether distrusts is not after-speech but after-thought * * * That [the declarations] shall be or appear to be spontaneous is indispensable, and it is for this reason alone that they are required to be speedy.”
Wigmore says that there can be no definite or fixed limit of time within which the declaration shall have been made, that each case must depend upon its own circumstances (§ 1750), adding that the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance. In this context, it may be appropriate to cite the often repeated language of Judge Vann, speaking for the unanimous court in People v. Gilbert (199 N. Y. 10, 24) concerning what constitutes premeditation and deliberation: ‘1 While the time for reflection is not measured in minutes or seconds it is measured by facts. The time must be long enough" to make a choice, as the result of thought and reflection, and to act upon the choice thus made. It is obviously impossible to measure this period by the ordinary method of measuring time and, hence, it is necessary to measure it by what must be done ”. Many cases are cited by Wigmore, in some of which the time interval is shorter and in others longer' than in the case at bar. The passage which has been quoted from Wigmore is important not only on account of his authority and clarity, but also for the reason that it was followed in People v. Del Vermo (supra). Wigmore’s distinction is recognized in Del Vermo between spontaneous declarations and the narrower meaning of res gestae, and the first declaration by Page but not the later ones was held to have been properly admitted on account of its spontaneity, immediately after Page fell to the sidewalk.
In People v. Hall (260 App. Div. 421), decided 32 years after Del Vermo, the Third Department held that statements by a decedent in a homicide case were erroneously admitted. The deceased there had been shot five times in the head and neck *73 as a result of which he died a few hours later. The shooting occurred at a gasoline station, after which the victim made his way to his home on the opposite side of the highway about 100 paces away. There he attracted the attention of his wife and son, and staggered in badly wounded when the front door was unlocked. His wife testified that she and their son helped him to a chair and asked him what had happened, after which he said that he had been shot by the man who had been hanging around the gasoline station for several nights.
This question has been presented in negligence cases, where declarations have been excluded in Greener v. General Elec. Co. (209 N. Y. 135); Martin v. New York, N. H. & H. R. R. Co. (103 N. Y. 626); Waldele v. New York Cent. & H. R. R. R. Co. (95 N. Y. 274); Schoenfeld v. Long Is. R. R. Co. (277 App. Div. 780); Handel v. New York R. T. Corp. (252 App. Div. 142, affd. 277 N. Y. 548). A contemporaneous declaration was admitted in Swensson v. New York, Albany Desp. Co. (309 N. Y. 497).
The Court of General Sessions gave this reason for excluding the declaration by Pickens in the instant case: “ As I understand the theory, a declaration of a decedent, even if made in response to an inquiry, would be admissible, provided the element of spontaneity was present; that the statement is made so impulsively as to exclude the element of reflected fabrication. On the present state of the record, however, there has necessarily been such a lapse of time as to permit, on the part of the now deceased, a period within which he had an opportunity to reflect and to contrive, and this necessarily destroys the basic ground upon which such a statement might be conceivably introduced under the theory of the Del Yermo case, and I want the record clearly to show the grounds for the Court’s rulings with respect to these alleged statements by the deceased.”
According to appellant, Pickens was still subject to the nervous excitement and physical shock of having been shot, which is claimed to have stilled his reflective faculties and removed their control. In support of this view is evidence that Pickens was interrogated by Officer Muldoon six minutes after he had been shot. Assuming the time interval to have been as brief as this, a number of events occurred before decedent’s conversation with Officer Muldoon. After having been shot in the basement of 254^256 West 146th Street, he was seen in *74 the hallway of the adjacent building, 260 West 146th Street; to have reached there he must have climbed down a 3-foot ledge, mounted a flight of 15 steps, and walked, in all, about 100 feet. In the hallway, he spoke to a woman, but what he said was stricken from the record on motion of counsel for defendant. He was later seen lying in the vestibule of 2742 Eighth Avenue, where he was interrogated by Officer Muldoon. To have arrived .at that location, he must have walked down the steps at 260 West 146th Street, about 45 feet westward on 146th Street, and then gone 50 feet southward on Eighth Avenue. There he was able to talk to the officer.
The People argue that his statement to Officer Muldoon implicating another man than defendant was the product of reflection. The decedent had reason to fabricate a story. He was a narcotic addict recently released from prison. Several days before the shooting he had robbed defendant of several packages of heroin. It is quite possible that in view of defendant’s pugnacity, his possession of a gun and his well-merited grievance, Pickens may have feared future violence at defendant’s hands. Pickens was not then anticipating death as a result of his wounds, and may have been wary of what defendant might do to him afterward if he were publicly to have charged him with armed assault.
Appellant’s brief appears to concede that the circumstances under which this declaration was made are open to different interpretations concerning its spontaneity. It is urged that the declaration should have been received in evidence in any event, and the question of its spontaneity submitted to the jury like the voluntariness of a confession under section 395 of the Code of Criminal Procedure (People v. Kennedy, 159 N. Y. 346; People v. Cassidy, 133 N. Y. 612; People v. Fernandes, 301 N. Y. 302). A decision is cited in the intermediate appellate court in California (People v. Keelin, 136 Cal. App. 2d 860, Ann. 56 A. L. R. 2d 372) where the spontaneity of a declaration was held to have been correctly submitted to a jury, under instructions that they were to disregard it if found not to have been spontaneous.
That California decision is contrary to the practice in New York State, where the established rule is that it is for the court and not the jury to decide questions of fact preliminary to deter *75 mining the admissibility of evidence (Harris v. Wilson, 7 Wend. 57; Jones v. Hurlburt, 39 Barb. 403, 410; Roberge v. Winne, 144 N. Y. 709, 715; Richardson, Evidence, § 195). In Roberge v. Winne, this court was confronted with conflicting testimony concerning whether a document offered in evidence was proper to be received. The opinion of the General Term is printed in the Court of Appeals Reports, where the affirmance was without majority opinion, stating: “It is apparent, therefore, that before the paper offered could have been admitted the court had to decide a preliminary question of fact whether the plaintiff had such knowledge of the contents of the unsigned paper as to make it binding upon him as evidence, and in deciding this question against the defendant we cannot say, as matter of law, that the learned judge was in error.”
In Jones v. Hurlburt (supra, pp. 410-411), where similar facts were involved to those in Harris v. Wilson (7 Wend. 57, supra), the decision in the latter case was thus summarized: “ In Harris v. Wilson, (supra,) it was held that the evidence received by a judge on the trial of a cause, as preliminary to the introduction of other evidence, is not to be submitted to the jury; that is the province of the judge, and not of the jury, to pass upon its sufficiency. Accordingly, where proof of the admissions of an alleged partner was offered, it was held the province of the judge, and not of the jury, to pass upon the fact whether he was such partner or not.” (Italics from original.)
This New York rule is not only well grounded in practice but is also sound in principle. The admissibility of evidence may depend upon complicated, collateral fact issues, which would be confusing in jury trials. If, in addition to the questions of fact which are directly involved, any number of collateral issues must be tried in order to determine the admissibility of evidence upon the principal issue, it would obstruct rather than facilitate the administration of justice.
Submission to juries of the voluntariness of confessions by defendants in criminal cases is an exception to this general rule. The reason for making the exception is apparent. In such instances the confession or admission relates to the subject matter of the criminal action being tried, and the only collateral question is whether it was coerced by force or fear. That, in itself, has a bearing on the guilt or innocence of a defendant. *76 An alleged confession or admission represents an endeavor to prove the charge at issue out of a defendant’s mouth. It is advanced to prove recognition by the person charged with the crime that he himself did all or some of the things which constitute the crime charged. The voluntariness of such an admission or confession by a defendant is so intimately related to the merits of the controversy that it has become natural to submit to juries, along with the other issues on trial, whether defendants actually did say or write the damaging material which is ascribed to them. That is different from submitting to juries collateral issues of fact on which depend the admissibility of declarations by third parties.
In the case of dying declarations, it is held that “ Whether the declarations were made in apprehension of death and after the declarant had lost all hope of recovery is to be determined by the judge ” (Follett, J., People v. Kraft, 91 Hun 474, 475, affd. 148 N. Y. 631). “ The trial judge must determine, not only from the conversation of the declarant but from the surrounding circumstances, that there is clear proof showing the certainty of speedy death and that the declarant had no hope of recovery. (People v. Ludkowits, 266 N. Y. 233, 239.) ” (People v. Smith, 245 App. Div. 69, 71.) In Ludkowits this court said (266 N. Y. 239): “Whether the preliminary proof advanced is sufficient to admit the receipt in evidence of a dying declaration presents in each case a question which must be determined by the trial judge.” Kraft and Del Vermo (supra) are cited as authority for this conclusion, along with People v. Smith (104 N. Y. 491), in which it was held on the principal point of law in the case that it is the function of the court, and not of the jury, to rule upon preliminary questions of fact affécting the admissibility of dying declarations.
Although we are not here dealing with a dying declaration, the same principle applies that it is in the province of the court and not of the jury (as contended by appellant) to decide preliminary questions of fact on which the admissibility of the declaration depends. That applies in the case of alleged spontaneous declarations as it does to dying declarations. The law would be inconsistent if in the one kind of declaration preliminary fact questions were to be decided by the judge and in the other by the jury. On the record in this case it cannot *77 be held that the Trial Judge erred as matter of law in finding the preliminary fact to be that the declaration of this homicidal victim lacked spontaneity, and that sufficient time had elapsed under the circumstances so that it could have been a reflective fabrication. The Trial Judge found that Pickens had opportunity to reflect and to contrive, which destroys the foundation upon which such declaration could be introduced under the Bel Vermo decision.
It is argued for respondent that the evidence establishes as matter of law that Pickens had opportunity to reflect and to contrive before making this declaration, so that no preliminary question of fact was presented for the trial court to decide in ruling on the People’s objection to the introduction of this declaration. We do not need to decide on that aspect, inasmuch as even if a preliminary question of fact was presented, it was resolved against appellant by the trial court.
The second point raised by appellant concerns prejudicial statements alleged to have been made by the prosecuting attorney to the jury in his summation. It is said that he attempted to bolster the credibility of witnesses for the prosecution with the prestige of his office, character and personality contrary to the rulings in People v. Lovello (1 NY 2d 436) and similar decisions. Although conduct of the kind condemned in the Lovello case is to be avoided, as the Appellate Division said in affirming this conviction, the circumstances here are different. These remarks to the jury must be considered in their relationship to the summation by the attorney for the defendant which had just been finished. The People’s principal witness Joan Scott, and other witnesses for the prosecution, were dope addicts. Defense counsel had told the jury in no uncertain terms that these witnesses had been suborned by the District Attorney’s office acting in conjunction with the police, by coercing them into giving false testimony implicating the defendant on the threat that drugs would be withheld from them, or furnished to them, according to whether they testified as the People wanted. The record contains no support for this serious charge. The reputations of the Assistant District Attorney in charge of the case, of the District Attorney’s office and of the police were thus injected into the case by the defendant’s attorney, who had told the jury “ You have to be *78 in the District Attorney’s office when the District Attorney is questioning these people ”, referring to the witnesses for the prosecution, in order to know why they testified as they did. Having made these gratuitous attacks upon the law enforcement authorities, appellant’s counsel is not in position to complain that the prosecuting officer said that his reputation and the reputation of the police were involved in the case. This is clearly reflected in the People’s summation at pages 839 through 841 of the stenographic minutes. They were involved for the reason that the attorney for the defendant had put them into the case. What the Assistant District Attorney said in reply may not have been letter perfect, but under these circumstances it was not prejudicial. Nor did the trial court lend weight to the statement, as was done in the Lovello case. The motion for mistrial on this ground was properly denied.
This motion for mistrial was made before the Assistant District Attorney’s main attempt to bolster, as it is argued, the testimony of the witness Joan Scott by vouching for her credibility. No motion for mistrial was made after those statements in support of Joan Scott were made to the jury, except a motion at the end of the trial based upon an altogether different ground. In the absence of an appropriate motion of this nature, the point is not available in this court (People v. Levine, 297 N. Y. 144, 148; People v. Pindar, 210 N. Y. 191, 196-197).
The judgment of conviction should be affirmed.