THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM SOSTRE, Appellant.

Second Department, July 16, 1979

## APPEARANCES OF COUNSEL

*William E. Hellerstein (Robert S. Dean* of counsel), for appellant.

*Eugene Gold, District Attoney (Wentworth E. Miller* of counsel), for respondent.

## OPINION OF THE COURT

TITONE, J.

The principal question raised on appeal is whether, under the circumstances, the on-the-scene statements of the defendant, to the effect that the complainant shot him "for nothing", were properly excluded by the trial court. The answer is in the affirmative. Accordingly the judgment of conviction should be affirmed.

The complainant, Confessor Mattei, testified at the trial that on July 27, 1976, at about 11:30 P.M., he was returning home after having closed his grocery store. He was carrying $458 in cash receipts. After traversing the five blocks from the store to his home, he entered the vestibule and walked across the hallway toward the elevator. As he reached the elevator, a man identified as the defendant came up from behind with a gun in his hand, and from six to eight feet away, asked Mattei for money. Mattei drew his own weapon and fired four shots at defendant. The latter was struck twice, once in the right arm and once in the leg. Defendant's gun fell to the floor. Mattei also testified that although defendant was wounded, he tried to leave the premises. However, Mattei prevented defendant's escape by standing in front of the door and holding him at gunpoint. Subsequently, at Mattei's direction or request, defendant sat on the floor. Mattei then told his wife to call the police who arrived about five minutes later. Upon arrival the police ordered Mattei to drop his weapon. He complied and told them that defendant tried to rob him.

Police Officer John Van Syckle testified that he and his partner responded to a radio call on July 27, 1976 between 11:40 and 11:45 P.M., requesting them to investigate an incident at 370 South 2nd Street in Brooklyn. They arrived at the scene within two or three minutes after the call. In the

hallway he observed two men, one standing with a gun in his hand and the other lying on the floor with a gun lying about a foot away from him. The complainant complied with Van Syckle's order to drop his gun. At the *Huntley* hearing, Van Syckle testified that when he entered the hallway defendant immediately began hollering that the complainant had "shot him for nothing." Such statements, according to Van Syckle, were not made in response to any questions. (At the conclusion of the *Huntley* hearing the trial court held that the statements of defendant in question were voluntary and could be introduced into evidence by the prosecution. However, prior to the beginning of the trial, the court granted the prosecutor's motion to preclude the defense from eliciting them on the ground they were self-serving, nonspontaneous and hearsay.)

At the trial, Van Syckle testified that although defendant was bleeding when the officer arrived at the scene, he appeared to be coherent and lucid. With respect to the gun found near defendant, the forensic witness for the prosecution, Police Officer Lionel Payne, testified that although there were fingerprints on both the gun and the bullets, they were not susceptible of interpretation.

On appeal, defendant contends that his statement on Van Syckle's arrival, that the complainant "shot him for nothing", should have been admitted in evidence as a spontaneous declaration, citing *People v Del Vermo* (192 NY 470, 483) and *People v Marks* (6 NY2d 67). Having been made two to five minutes after the shooting, argues defendant, the statement came within the time period in which excited utterances may be allowable. In opposition the People assert that the facts adduced both at the *Huntley* hearing and trial give ample evidence of defendant's ability to reflect after being shot, and of the contrived nature of his subsequent statement. Contrary to the view expressed in the dissent, I do not attach any significance to the fact that at the instance of the prosecution, the trial court prohibited defendant from using the statement in his defense, although earlier, it had denied his motion to suppress it after the *Huntley* hearing. In my opinion, that each party switched its position as to the admission of the self-serving statement has no bearing on whether it should have been placed before the jury either as part of the *res gestae,* or as an exception to the hearsay rule.

Although defendant confines his argument for admission of

the statement in evidence to the premise that it was a spontaneous declaration, I believe it incumbent that this court should also ascertain whether, under the circumstances, it should have been admitted as a declaration demonstrating defendant's existing state of mind, attitude or belief at the time he made it, or as a "verbal act".

■ All three of these categories have been labeled as exceptions to the hearsay rule and as constituting a part of the *res gestae*. However, numerous legal commentators have distinguished the spontaneous declaration from the doctrine of *res gestae* and the latter's progeny, the verbal act. Rather than considering it part of the *res gestae*, which means literally "the thing done" or matters incidental to the main fact and explanatory of it (22A CJS, Criminal Law, § 662, subd [1]; see, also, *People v Marks*, 6 NY2d 67, 71, *supra*), they now consider a spontaneous declaration or excited utterance to be a true exception to the hearsay rule. The rationale of such exception is that where the statement is made under immediate and uncontrollable domination of the senses as a result of the shock produced by the event, the remarks or utterances may be taken as expressing the real belief or tenor of the speaker (6 Wigmore, Evidence [Chadbourn rev, 1976], §§ 1745, 1747; 22A CJS, Criminal Law, § 662, subd [3]; cf. *People v Marks*, *supra*, p 71). The criteria for admissibility of a statement as a spontaneous declaration or excited utterance are (1) the existence of an exciting event, and (2) whether it was prompted thereby without time to reflect, that is whether it was dominated by the nervous excitement of the event *(Murphy Auto Parts Co. v Ball*, 249 F2d 508, cert den 355 US 932; cf. *People v Del Vermo*, 192 NY 470, *supra; People v Hughes*, 56 AD2d 954; Fisch, New York Evidence [2d ed], § 1000; 22A CJS, Criminal Law, § 662, subd [3]).

■ With respect to the declaration of existing state of mind exception, it has been held or enunciated that an extrajudicial declaration as to a declarant's state of mind existing prior to or after an occurrence, is admissible in evidence provided it was made spontaneously and naturally and under circumstances which are free from suspicion *(Executive Employment Serv. v Executive Unlimited*, 180 F Supp 258; Fisch, New York Evidence [2d ed], § 997; 6 Wigmore, Evidence [Chadbourn rev, 1976], § 1725). It is admissible on the theory that " '[t]he stream of consciousness has enough continuity so that we may expect to find the same characteristics for some distance up or

down the current' " *(People v One 1948 Chevrolet Convertible Coupe,* 45 Cal 2d 613, 621).

■ As indicated above, today the "verbal act" or "present impression" evidentiary doctrine, is widely held in legal circles as not an exception to the hearsay rule, but rather as within the *res gestae* concept and thus forming part of the transaction itself *(People v Marks,* 6 NY2d 67, 71, *supra).* It has been defined, *inter alia,* as an utterance which accompanies an act or conduct to which it is desired to give a legal effect (cf. *Keefe v State,* 50 Ariz 293; 22A CJS, Criminal Law, § 662, subd [2]). Verbal acts are themselves part of the transaction which they illustrate, explain or interpret *(People v Willson,* 401 Ill 68). The use of utterances as verbal acts has four limitations: (1) the conduct to be characterized by the words must be material to the issue; (2) the conduct must be equivocal in its nature; (3) the words must aid in giving legal significance to the conduct; and (4) the words must accompany the conduct *(Keefe v State, supra;* 6 Wigmore, Evidence [Chadbourn rev, 1976], § 1772).

■ In my opinion, under the circumstances the statement uttered by defendant was not admissible under any of the categories discussed. With respect to the spontaneous declaration theory, while undoubtedly defendant's remark that the complainant shot him "for nothing" was the outgrowth of an exciting event, namely the confrontation between him and the complainant and the ensuing gunfire, I believe the interval of time between the event and the statement, and other factors, clearly negate any contention that the statement was prompted by the incident without time to reflect, and thus was dominated by the nervous excitement of the event. The record reveals that at least five minutes and probably more time elapsed between the shooting and the arrival of Van Syckle at the scene. According to the uncontroverted testimony of the complainant, right after the shooting defendant attempted to flee. However, the complainant prevented him from doing so at gunpoint and then directed him to sit or recline on the floor. Testimony was also adduced from the complainant that although during the incident no one else was present in the hall, some residents of the building and his wife did appear shortly thereafter. However, no testimony was ever elicited from any of such residents by defendant that he made any remarks before the arrival of the police similar to the one Van Syckle heard when he and his partner came upon the

scene. It should also be noted this was not the first time defendant had been involved in the commission of a violent crime or other criminal activity. In 1971 he was convicted of assault in the third degree and in 1974, of criminal possession of a controlled substance. He was also convicted in 1971 of criminal possession of stolen property. Thus, in order to avoid a severe sentence upon conviction herein because of his prior criminal conduct, defendant had reason to contrive or fabricate the statement during an interval in which, under the circumstances, there was ample time for reflection (cf. *People v Marks*, 6 NY2d 67, 70, *supra*). Accordingly, on the record in this case it cannot be held that the Trial Judge erred in finding the preliminary fact to be that defendant's declaration lacked spontaneity and that sufficient time had elapsed under the circumstances so that it could have been a product of reflection (see *People v Marks, supra*, pp 74-77).

The declaration of state of mind theory is likewise inapplicable in the instant situation. First, its purported spontaneity is extremely questionable, as discussed above under the theory of "spontaneous declaration". Second, it does not appear from the record that it was made under circumstances which are free from suspicion. According to the complainant, the defendant accosted him from the rear holding a revolver. After he wounded defendant, the latter's weapon fell to the floor. When Van Syckle arrived at the scene five or more minutes later he observed a gun lying next to defendant's right side, about a foot from him. Although testimony was adduced at the *Huntley* hearing that defendant stated that the complainant's brother or son had planted the weapon which was found next to him, no such version was put before the trial jury. Thus, the only reasonable view of the trial evidence, notwithstanding defendant's exculpatory remark, was that defendant attempted to commit an armed robbery of the complainant, that he was prevented from doing so by the complainant, and that his weapon fell from his control to the ground in the ensuing melee.

Furthermore, it should be observed that not only is the subject statement of defendant to Van Syckle not free from suspicion, but also there is absent from the record any circumstantial evidence that it was probably trustworthy and credible (see *People v Hamilton*, 55 Cal 2d 881; *People v Lew*, 68 Cal 2d 774; 29 Am Jur 2d, Evidence, § 650).

Finally, the "verbal act" doctrine is also unavailable to

justify the admittance in evidence of defendant's statement. It is uncontroverted that the declaration in issue was not uttered until five or more minutes after the altercation and that no evidence was adduced that similar statements were uttered by him during such ensuing period. Thus, under the circumstances it cannot be said that the utterance accompanied the conduct, i.e., the altercation, and formed a part of the transaction itself (see *People v Marks,* 6 NY2d 67, 70, *supra).* Unlike a spontaneous declaration which is a narrative of a past transaction, verbal acts are utterances which accompany some act or conduct to which it is desired to give legal effect *(People v Marks, supra,* p 70; *Keefe v State,* 50 Ariz 293, *supra; People v Cruz,* 264 Cal App 2d 350; 22A CJS, Criminal Law, § 662, subd [2]). They must therefore accompany the other conduct, for otherwise it is no part of the act and can serve merely as an ordinary hearsay assertion of what has already been done (6 Wigmore, Evidence [Chadbourn rev, 1976], § 1776).

We have examined other points raised by defendant and have found them to be without merit. Accordingly, the judgment of conviction should be affirmed.

HOPKINS, J. P. (dissenting). I dissent and vote to reverse the judgment and order a new trial.

The defendant was convicted after trial of the crime of attempted robbery in the first degree. At the *Huntley* hearing, a police officer testified that he found the defendant lying on the floor of the vestibule of an apartment building and the complainant holding a gun, standing over the defendant. The defendant was bleeding from wounds in his arm and leg; by his side, a foot away, was another gun. The police officer testified that he heard the defendant "hollering" that the complainant had "shot him for nothing." Following the *Huntley* hearing the court ruled that the statement was voluntary and could be introduced into evidence by the prosecution.

However, the prosecution chose not to use the statement and, indeed, before the trial began the prosecution moved to preclude the statement on the grounds that it was self-serving, not spontaneous, and was hearsay. The court granted the motion. Hence, the jury did not receive the full evidence of what the police officer encountered on reaching the scene a few minutes after the confrontation between the complainant and the defendant. I am persuaded that this was error and that the defendant should have a new trial, at which this evidence would be admissible.

The theory of the prosecution, based on the testimony of the complainant, was that the defendant had attempted to rob the complainant with a gun in the vestibule and hallway of the apartment building where the complainant lived; that the complainant drew his own gun and fired on the defendant, wounding him; that the complainant commanded the defendant to sit on the floor; that the complainant told his wife to call the police; and that she had done so. The defendant did not testify. No fingerprints were found on the gun lying near the defendant which were susceptible of interpretation and the gun was not traced to the defendant.

The statement was technically hearsay, since it was an extrajudicial utterance (see 5 Wigmore, Evidence [Chadbourn rev, 1974], § 1361). It should not have been excluded, however, because it was self-serving (cf. Richardson, Evidence [10th ed], § 358). It was properly admissible on any one of three grounds:

1. It was a statement after the act, showing the defendant's then existing state of mind, from which his state of mind at the time of the act could be inferred (see *People v Strewl,* 246 App Div 400; *State v Baldwin,* 47 NJ 379, cert den 385 US 980; *Walters v State,* 39 Ala App 50; cf. *People v Lewis,* 246 App Div 93, 99, concurring opn of HILL, P. J.; see, generally, 6 Wigmore, Evidence [Chadbourn rev, 1976], § 1732, pp 161-162). The hearsay statement is not suspect because of any doubt that it was not made; the police officer's testimony insures the authenticity that the defendant said it. Moreover, the statement elucidates an ambivalent scene that the officer saw: which of the two—the complainant or the defendant—was the aggressor and which was the victim?

2. It was a spontaneous statement made shortly after the act (see *People v Del Vermo,* 192 NY 470, 486).

3. It was a statement which, as a verbal act, was material to the issue, assisted in explaining equivocal conduct, gave legal significance to the conduct, and accompanied the conduct (see 6 Wigmore, Evidence [Chadbourn rev, 1976], § 1745, p 193) and is recognized as admissible evidence *(Waldele v New York Cent. & Hudson Riv. R. R. Co.,* 95 NY 274; *Hine v New York El. R. R. Co.,* 149 NY 154; *People v De Simone,* 225 NY 261).

We should not restrict the reception of evidence which bears closely on the guilt of the defendant merely on account that it is hearsay (see, e.g., *People v Arnold,* 34 NY2d 548, 549-550; cf. Fed Rules Evidence, rule 803 [US Code, tit 28, Appendix], in listing classes of utterances not excluded by hearsay).

Particularly this is so here, where the court first permitted the evidence to be used against the defendant, and then, at the instance of the prosecution, would not allow the defendant to use it in his defense.

The exclusion of the evidence was manifestly prejudicial to the defendant and, for that reason, a new trial is required at which the jury may appraise the weight and credibility of the defendant's statement in light of the other evidence in the case.

SUOZZI and COHALAN, JJ., concur with TITONE, J.; HOPKINS, J. P., dissents and votes to reverse the judgment and order a new trial, with an opinion.

Judgment of the Supreme Court, Kings County, rendered September 8, 1977, affirmed.