■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTHUR TOOMBS, Appellant. — Judgment unanimously affirmed. Memorandum: The jury found defendant guilty of attempted rape in the first degree and sexual abuse in the first degree in connection with an attack upon a 58-year-old woman on the early morning of August 19, 1979. Two days after the alleged crimes, the victim suffered a stroke which rendered her mute, and on September 4, 1979 she suffered a heart attack. She did not testify at trial because she was confined to a nursing home and remained unable to speak. Mildred Smith testified that she awoke at 6:00 A.M. on August 19, 1979 and heard the voices of a man and woman. The woman was mumbling the word "please". From her bedroom window she saw two figures "wrestling" on the ground. She called the police and reported that a rape was in progress. Mildred's husband, James Smith, testified that he kept the two figures in view until the police arrived. He said that the woman was lying on the ground with the man hovering over her and that the man attempted to drag the woman along the ground. Police Officers Carey and O'Shei responded to the call and arrived at the scene within three minutes. They observed defendant crouched over a woman, holding her shoulders to the ground. After looking toward the approaching officers, defendant attempted to lift the woman. The police officers then helped the woman to her feet and observed that her pants were down around her knees; her face and arms were bruised; she had a bite wound on her chin; she walked with a limp; defendant's shirt was disarrayed; and the zipper to his trousers was fully open. Defendant told the officers that the woman had been attacked by two black males who had since fled and that he had come to her aid. Defendant repeatedly asked the woman "isn't that right?" and, according to the officers, she "nodded". Both officers testified that the victim was incoherent, and appeared dazed and terrified. Officer O'Shei testified that as he drew the victim away from the defendant, she grew somewhat calmer and began pointing at the defendant. Over objection and after an offer of proof, O'Shei was allowed to recount the conversation he had with the victim. O'Shei asked "Did he attack you?" and the victim said "Yes." O'Shei asked why she hadn't said anything sooner and the victim stated that defendant had threatened to kill her if she said anything. The victim also told O'Shei that defendant had bitten her on the chin, had raped her but "he didn't get a chance to finish" because the police arrived, and that defendant was her sole attacker. O'Shei further testified that the victim remained terrified and fearful throughout the conversation which commenced 5 to 10 seconds after the victim was separated from defendant, and had a duration of 30 seconds to a minute. Shortly after the attack, the victim was treated for her injuries by Dr. Manzella, who testified that there was a causal relationship between the injuries and the subsequent stroke and heart attack. Defendant contends on appeal that the court erred in receiving O'Shei's testimony of the statements made by the victim at the crime scene and also erred in receiving the medical opinion of causal relationship. Both arguments must be rejected. The trial court found that the victim's statements to Officer O'Shei were excited utterances and were admissible as an exception to the hearsay rule (see *People v Edwards,* 47 NY2d 493; *People v Caviness,* 38 NY2d 227). "Excited utterances are regarded as trustworthy because they are precipitated by a startling event and made in such proximity to the startling event that the declarant lacks the reflective capacity necessary for fabrication" (*People v Acomb,* 87 AD2d 1, 9). We find no error in the trial

court's determination that the victim's statements were made with the requisite spontaneity and without opportunity for reflective capacity (see *People v Marks,* 6 NY2d 67). Nor was the testimony rendered inadmissible because the victim's declarations were made in response to the police officer's questions. While this is a factor to be weighed in determining whether the testimony should be received, it was the victim who precipitated the conversation with the police officer by pointing at the defendant. The police officer's inquiry was a natural and spontaneous response which did not destroy the excited utterance character of the victim's statements (see *People v Edwards,* 47 NY2d 493, 498-499, *supra; People v Del Vermo,* 192 NY 470). Since the testimony was properly received, there is no merit to defendant's claim that he was denied his right of confrontation and cross-examination (see *Mattox v United States,* 156 US 237). Equally without merit is defendant's claim that medical opinion testimony as to the causal relationship between the victim's injuries and her subsequent stroke and heart attack was irrelevant and prejudicial. The testimony that the victim had suffered a stroke and heart attack was received without objection and the testimony of causation was probative of the element of forcible compulsion (see Penal Law, § 130.35, subd 1; § 130.65, subd 1; § 130.00, subd 8). Although the other issues now raised by defendant were not preserved for review, we find in any event that defendant received a fair trial. (Appeal from judgment of Supreme Court, Erie County, Kasler, J. — attempted rape, first degree, and sexual abuse, first degree.) Present — Dillon, P. J., Doerr, Denman, O'Donnell and Moule, JJ.